```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X

UNITED STATES OF AMERICA
                                :

        - v -                   :        S1 10 Cr. 339   (RJS)

DANIEL SPIEGELMAN               :

                                :
              Defendant.
-------------------------------X
```

## SENTENCING MEMORANDUM

                          Respectfully submitted,
                          LEONARD F. JOY, ESQ.
                          Federal Defenders of New York
                By: _____
                          **ROBERT M. BAUM, ESQ.**
                          Attorney for Defendant
                          **Daniel Spiegelman**
                          52 Duane Street - 10th Floor
                          New York, New York 10007

```
TO:   PREET BHARARA, ESQ.
      United States Attorney
      Southern District of New York
      One St. Andrew's Plaza
      New York, New York 10007
      Attn: Sarah E. McCallum, ESQ.
      Assistant United States Attorney
```

Dated: December 1, 2010

# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Leonard F. Joy
*Executive Director and
Attorney-in-Chief*

*Southern District of New York*
John J. Byrnes
*Attorney-in-Charge*

December 1, 2010

**BY ECF and HAND**

Honorable Richard J. Sullivan
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Room 640
New York, New York 10007

Re:   **United States v. Daniel Spiegelman**
      **S1 10 Cr. 339 (RJS)**

Dear Judge Sullivan:

    This letter is respectfully submitted on behalf of my client Daniel Spiegelman, in anticipation of his sentencing hearing scheduled for December 9, 2010. For the reasons set forth more fully below, we respectfully request that the Court impose a sentence at the low end of the applicable Sentencing Guidelines Range. That is, a term of 27 months under Counts I and III, and a term of 24 months to run consecutive under Count II for a total sentence of 51 months.

    Based under the numerous mitigating factors that the Court must consider pursuant to 18 U.S.C. §3553(a), such a sentence is "sufficient, but not greater than necessary," to achieve the goals of the Sentencing Reform Act. Those factors, include; (1) Mr. Spiegelman's serious mental disorder, physical condition and severe drug addiction, which contributed to the commission of the offense; (2) the nature and circumstances of the offense; (3) the use of related conduct to increase the Criminal History Category from Category IV to Category V; and (4) Mr. Spiegelman's conduct directed toward his rehabilitation while incarcerated.

    Both Mr. Spiegelman and the Government, by plea agreement, believe that a sentence within the stipulated Guidelines Range of 51 to 57 months is sufficient to address his criminal conduct. Probation has recommended a sentence at the high end of the Guidelines Range, 57 months. They have also recommended that the

Honorable Richard J. Sullivan             December 1, 2010
United States District Judge              Page 2
Southern District of New York

Re:  **United States v. Daniel Spiegelman**
     **S1 10 Cr. 339 (RJS)**

Court endorse Mr. Spiegelman's admission in the Bureau of Prisons Residential Drug Abuse Treatment Program (500 Hour Program), in order to address Mr. Spiegelman's extensive history of substance abuse.

### A Sentence Of 51 Months At The Low End Of The Applicable Guidelines Range Is Warranted

#### I.  Mr. Spiegelman Suffers From A Serious Psychiatric Disorder

Defense Counsel has represented Mr. Spiegelman in the past, for convictions in 2000 and 2009. Following Mr. Spiegelman's arrest for the instant offense on February 2, 2010, counsel noted a marked deterioration in Mr. Spiegelman's mental and physical condition. On this basis, Dr. Eric Goldsmith was requested to conduct a psychiatric evaluation. ( A copy of Dr. Goldsmith's curriculum vitae is attached as Defense Exhibit A).

Dr. Goldsmith is a Board Certified Psychiatrist, Co-Director, Fellowship in Psychiatry and the Law, New York University School of Medicine; Assistant Clinical Professor of Psychiatry at the School of Medicine; and former President of the American Academy of Psychiatry and the Law. He is currently engaged in private practice in Adult Psychiatry. He has been previously qualified as an expert in Psychiatry in several courts including the Southern and Eastern Districts of New York.

Dr. Goldsmith was asked to determine whether Mr. Spiegelman suffered from any psychiatric disorder. He concluded

**REDACTED**

and confirmed by facts provided

Honorable Richard J. Sullivan  December 1, 2010
United States District Judge  Page 3
Southern District of New York

Re: **United States v. Daniel Spiegelman**
    **S1 10 Cr. 339 (RJS)**

by his mother and facts underlying the instant offense. His use of different phones, different identities and mail boxes in different names all relate to his mental disorder. Although during his interview with Dr. Goldsmith Mr. Spiegelman did not attempt to use his paranoia as a way to explain his criminal conduct, there is a clear correlation between that conduct and the instant offenses. His delusional paranoia that he is under constant surveillance by the Government has a logical impact on his desire to assume other identities. His mental disorders had never previously been diagnosed or treated. After considering various factors, Dr. Goldsmith also concluded that
**REDACTED**
                                                        Exhibit B at 7.

One of Mr. Spiegelman's beliefs, is that his use of his own name subjects him to mail with subliminal messages and allows unknown individuals to find him and either steal his mail or put subliminal pressure on him to do certain acts. As an example of this he provided counsel with a letter he received at the MDC telling him that he is pre-approved for a credit card with a "Guaranteed $10,000 credit limit." See Defense Exhibit C. Mr. Spiegelman believes that this corroborates his belief that using his own name makes him susceptible to external pressures and that he can be found anywhere. While Mr. Spiegelman has acknowledged the commission of bank fraud and identity theft because he filed for a line of credit of $200 under the name and identity of Mark Sher, he did so after having been solicited on several occasions to apply for a similarly pre-approved line of credit in the name of Mark Sher.

**II. Mr. Spiegelman's Substance Abuse and Physical Condition**

As detailed in the Presentence Report ("PSR"), Mr. Spiegelman has a long history of substance abuse. He started drinking alcohol as a teenager. When arrested on the charges herein, he was consuming one or two glasses of whiskey or brandy on a daily basis. His natural father was an alcoholic. He began using marijuana at approximately age 15 and continued to the day of his arrest. His use was almost on a daily basis. When Mr. Spiegelman was arrested in Belgium in 2006, he was charged with growing marijuana in his apartment thereby substantiating his

Honorable Richard J. Sullivan  December 1, 2010
United States District Judge  Page 4
Southern District of New York

Re: **United States v. Daniel Spiegelman**
    **S1 10 Cr. 339 (RJS)**

extensive use prior to his arrest on this case. When Mr. Spiegelman failed to follow the conditions of his supervised release by not appearing for supervision imposed by Judge Holwell, he candidly acknowledged to Dr. Goldsmith that it was because he used marijuana shortly after his release from jail and was fearful of being incarcerated again for a failed drug test.

Aside from Mr. Spiegelman's psychiatric illness and substance abuse, he has been subject to some physical impairment. In Belgium, he fell off a ladder, traveling a distance of approximately 16 feet and crashed through a glass roof. He was hospitalized for a few days and diagnosed with a concussion. He received physical therapy for his injuries. As a result, he has been suffering from some memory loss and on occasion loses the sense of touch in his left hand. He now consistently suffers from migraine headaches and uses marijuana to self medicate. While in custody at the MDC, he feinted and was taken to Lutheran Hospital for emergency treatment. After feinting, he suffered an injury to his right foot which caused him to limp for several months.

### III. The Nature and Circumstances Of The Offense

Mr. Spiegelman is subject to two separate substantial jail sentences. For the crime of aggravated identity theft, he faces a mandatory sentence of 24 months to run consecutive to any sentence imposed for bank fraud and possession of five identification documents.

Mr. Spiegelman's bank fraud and aggravated identity theft is founded on his application and use of a credit card in a false name, Mark Sher. The actual theft of Mr. Sher's identity occurred more than 11 years ago when he used that identity to obtain a passport. PSR ¶50. The credit that he applied for had a credit limit of $200. The crux of the crime is that he received a line of credit ($200) using false information for a credit card that he would not have received under his true name. It is notable, that although Mr. Spiegelman did use the credit card, subjecting the bank to a possible loss, he paid each of the credit bills when they became due. As a result, there was no loss to any victim in this case.

Honorable Richard J. Sullivan          December 1, 2010
United States District Judge              Page 5
Southern District of New York

Re:  **United States v. Daniel Spiegelman**
     **S1 10 Cr. 339 (RJS)**

**IV. Related Conduct Computed In The Criminal History Category Increased The Category And Is A Factor For The Court To Consider In An Application For Sentence At The Low End Of The Guidelines Range**

Based on the plea agreement entered into between the Government and Mr. Spiegelman, the parties believe that a sentence within the stipulated Guidelines Range is appropriate Mr. Spiegelman does not seek a sentence outside the stipulated Guidelines Range. However, Mr. Spiegelman was willing to forego litigation regarding whether his Criminal History Category was IV or V, when he entered into the agreement. Nevertheless, this factor can be appropriately considered as a 3553(a) factor. Under Criminal History Category IV the total Guidelines Range would be 46 to 51 months rather than 51 to 57 months. When this difference is considered as a 3553(a) factor, a sentence in Category V of 51 months (where the two Guidelines intersect), is appropriate.

Mr. Spiegelman's conviction before Judge Holwell for passport fraud has been assessed 3 points toward his criminal history score. PSR ¶ 49. If these points were not assessed, Mr. Spiegelman would be in Criminal History Category IV with 8 Criminal History points.

Criminal History points are assessed for a prior sentence, which is defined as a sentence "for conduct other than conduct that was part of the instant offense." See §4A1.2 a.n. 1. Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense. See §1B1.3. Relevant conduct includes all acts committed by the defendant that either occurred during the commission of the offense of conviction or **in preparation for that offense**. See §1B1.3(a)(1). (Emphasis added).

The conviction before Judge Holwell for passport fraud, involved Mr. Spiegelman seeking and applying for a passport under a false identity that he had stolen from Mark Sher. He used Mr. Sher's name and other identifying information to obtain the passport. PSR ¶50. The instant offense charges the use of Mr. Sher's name and identifying information in the commission of Counts I and II. In count I, Mr. Spiegelman used Mr. Sher's identity to open a credit card account, with Capital One Bank on

Honorable Richard J. Sullivan                December 1, 2010
United States District Judge                  Page 6
Southern District of New York

Re:   **United States v. Daniel Spiegelman**
      **S1 10 Cr. 339 (RJS)**

October 12, 2009, thereby committing bank fraud. In Count II, Mr. Spiegelman committed aggravated identity theft by using Mr. Sher's identity to commit the bank fraud. The PSR acknowledges that "Spiegelman's use of the identity of 'Mark Brian Sher' **is related to the conduct charged in Counts 1-2**." See PSR ¶ 16. (Emphasis added)

     The Second Circuit has held that acts may be found to be part of the same course of conduct and thus exempt from criminal history calculations "if the defendant engaged in a repeated pattern of similar criminal acts, even if they were not performed pursuant to a single scheme or plan." United States v. Brennan, 395 F.3d 59, 70 (2d Cir. 2005). The same course of conduct focuses on whether the defendant repeats the same type of criminal activity over time. It does not require that the acts are connected together by either common participants or by an overall scheme. Id. Thus, a conviction for bankruptcy fraud was exempt from criminal history calculations in a conviction for criminal contempt. Id. at 70. See also United States v. Butler, 970 F.2d 1017, 1025 (2d Cir.) (Suggesting that acts of arson and assault in aid of a scheme of extortion against a different victim could support a finding of common scheme or plan), cert denied 506 U.S. 980 (1992).

     Since a Guidelines sentence under Criminal History Category IV and Category V overlap at 51 months, the imposition of such a sentence is warranted.

**V.     Mr. Spiegelman's Post-Arrest Conduct
        And His Letter To The Court**

     During his incarceration, Mr. Spiegelman began to appreciate and understand the impact of his serious substance abuse problems on his criminal conduct. Although he is also aware of the conclusions of Dr. Goldsmith concerning his mental disorder, addressing that will require long term psychiatric counseling and appropriate medication as recommended. Nevertheless, Mr. Spiegelman has written to the Court in an intelligent and candid manner regarding his past and his future. He fully expects that the Court will impose a significant sentence of incarceration to be followed by a period of supervised release. He has come to grips with the fact that he has been wasting his life and needs

Honorable Richard J. Sullivan			December 1, 2010
United States District Judge			Page 7
Southern District of New York

Re:	**United States v. Daniel Spiegelman**
	**S1 10 Cr. 339 (RJS)**

to take positive steps to change his future. See Spiegelman letter, Defense Exhibit D.

He seeks to pursue a course of conduct which will provide him with meaningful employment and give his life some direction. Mr. Spiegelman has always had an aptitude for mathematics and the focus to work with great detail. As a result he has enrolled in a program with Ashworth Career School to complete approximately 96 hours in their Accounting program. See Defense Exhibit E. Mr. Spiegelman has conscientiously been applying himself to the course, using virtually all of his free time to study. Thus far, his test results indicate that he has been "perfect" on 8 of 10 lessons. When he is released on supervision, Mr. Spiegelman hopes to continue his studies to obtain a full professional degree in accounting.

Mr. Spiegelman does have a significant work history. In the past year, he earned a modest income by teaching and tutoring in the Russian language. He also worked as a painter and did light renovation work. While in Belgium, he worked as a waiter and a cook at various restaurants.

In 1999, he worked as a delivery person for an optical company and his employer wrote to the Court commending him as responsible and hardworking, indicating that despite his legal problems, he was reliable, never late, and they would rehire him again.

His most significant period of employment was for a period of six years from 1985 to 1991. He was employed full-time as a research assistant and information specialist for the Enzo Biochemical Company.

Mr. Spiegelman's history does provide a solid basis to believe that he is capable of making a legitimate contribution to his community and that he is quite capable of successfully completing any period of supervision which the Court may impose. Probation has reported that Mr. Spiegelman has never reported for supervision "even once" after each release from custody. PSR at p. 34. That is incorrect. When Mr. Spiegelman was placed on supervision by Judge Kaplan, he was charged with a new offense while in a halfway house. He never commenced any period of

Honorable Richard J. Sullivan  
United States District Judge  
Southern District of New York

December 1, 2010  
Page 8

Re: **United States v. Daniel Spiegelman**
    **S1 10 Cr. 339 (RJS)**

supervision. When he was placed on supervision by Judge Preska, he reported for approximately 6 to 8 months. He did not report only after Judge Holwell imposed a term of supervision.

**VI.     Criminal History**

Mr. Spiegelman's criminal history has been accurately described in the PSR. The nature and circumstances of his criminal conduct have been detailed. They do not signify acts of violence or drug trafficking. The defense and the Government have agreed that a Guidelines sentence is warranted and Probation has considered upward departures and also recommends a Guidelines sentence.

If the Court considers a sentence above the Guidelines to be appropriate, we respectfully request an opportunity to write to the Court in greater detail as to the reasons, both factually and legally why such a sentence is not warranted. Based on the circumstances set forth above, we urge the Court to impose a sentence of 51 months.

Stated briefly, Mr. Spiegelman has 4 prior convictions committed over the last 27 years. In the last 10 years, he has one prior conviction. All of his convictions are non-violent. This type of criminal history does not serve to distinguish Mr. Spiegelman from any other recidivist who commits several crimes (or some who repeatedly commit the same conduct as in drug offenses), within a short period of time following their release from incarceration. Such broad reasoning could justify departing upwards in all cases of recent recidivism. This would directly conflict with the congressional mandate that District Courts must avoid disparity when sentencing defendants with similar records who are found guilty of similar conduct. See 18 U.S.C. §3553(a)(6). More importantly, the Guidelines specifically prohibit a prior arrest record in itself, as being considered for purposes of an upward departure. §4A1.3(a)(3).

In those instances where the Second Circuit has affirmed upward departures in the Criminal History Category based on recidivism, the circumstances presented were far more egregious than those in the instant case. See United States v. Ashley, 141

Honorable Richard J. Sullivan                        December 1, 2010
United States District Judge                            Page 9
Southern District of New York

**Re:   United States v. Daniel Spiegelman**
      **S1 10 Cr. 339 (RJS)**

F.3d 63, 70 (2d Cir. 1998), cert. den. 525 U.S. 888 (1998), (upward departure for recidivism appropriately based on defendant's 18 convictions in one five year period and two to three arrests shortly following his release from imprisonment); United States v. Thomas, 6 F.3d 960, 967 (2d Cir. 1993), (Departure to a 36 month sentence from 12-18 month Guideline range based on an "incredible" range of criminal behavior not incorporated into the Guideline range. Three offenses were committed while the defendant was on bail, and his criminal history included 20 convictions and arrests over a 20 year period, eight of which were uncounted.); United States v. Harris, 13 F.3d 555, 558 (2d Cir. 1994), (The defendant committed a new crime less than seven months after release from an eight year sentence, and violent criminal history included 15 uncounted convictions);

    Other circuits have also interpreted the degree of recidivism which justifies departure in a manner which does not comport with Mr. Spiegelman's criminal history. See United States v. Connelly, 156 F.3d 978, 984 9th Cir. 1998), (Upward departure for recidivism appropriately based on defendant's five convictions within 10 years of the instant offense, some occurring shortly after release from prison, three of which resulted in concurrent sentences of 18 months); United States v. Aymelek, 926 F.2d 64, 73 (1st Cir. 1991), ("seven earlier convictions, though outdated, were distinguished by their numerosity and dangerousness."); United States v. Bennett, 975 F.2d 305, 310 (6th Cir. 1992), (departure for recidivism founded on fact that defendant committed instant offense nine days after release from jail for identical offense and criminal history included 12 offenses in 18 years, service of 8 years in prison, escape from prison once, and violent, assaultive background).

**VII.     Letters From Family and Friends**

    Family and friends of Mr. Spiegelman have written to the Court on his behalf in the hope of providing some insight into his character that is not otherwise evident. See Defense Exhibit F. Most have known Mr. Spiegelman for 20 to 30 years or more. They agree that Mr. Spiegelman is extremely generous and willing to extend his time and services on behalf of others without any reward or remuneration.

Honorable Richard J. Sullivan                    December 1, 2010
United States District Judge                          Page 10
Southern District of New York

Re:   **United States v. Daniel Spiegelman**
       **S1 10 Cr. 339 (RJS)**

      Daniel's mother, Galina, writes to confirm the serious drug and alcohol abuse that has plagued her son for years. She relates that the excessive use of drugs and alcohol seems to have begun after the tragic break-up of Mr. Spiegelman's marriage in 1995. It escalated when he was in Belgium. Although she got him to seek counseling, with positive results, he stopped following a fall from a ladder in Belgium and his drug problems worsened.

      Obdulia Rodriguez has lived next door to Daniel and his mother since 1983. She knows Daniel as a kind, and well-mannered person who was willing to help others in need. This sense of Mr. Spiegelman is echoed by Lana Gabrieli who has known Daniel for more than 20 years. She relates a period of time, in early 1994, when her elderly mother had fallen, injured herself, and was disabled. The family could not afford to pay for home care. It was Daniel who stepped in to help her mother with shopping and home chores. He read the newspaper to her and helped her with her rehabilitation. He refused to take any money for his help.

      Patrick Tkhilava knew Daniel and his family from the time they lived in the Republic of Georgia. He emigrated to the United States, and spoke very little English. It was Daniel who helped him with the legal papers necessary to bring his wife, a medical doctor, to the United States. Other friends of Mr. Spiegelman and his family also support the view that Daniel is thoughtful, dependable, and always willing to help others in need.

**VIII.**      **Recommendations To The Bureau of Prisons**

      Probation has recommended that the Court's final judgment include a recommendation to the Bureau of Prisons that Mr. Spiegelman enter their Residential Drug Abuse treatment Program (the 500 hour program). PSR at 35. That recommendation seems well-founded on the facts and Mr. Spiegelman's admissions. We endorse that recommendation.

      Mr. Spiegelman's mother visits him almost weekly. She is virtually the only family he has in this country. In order for her to continue visitation based on the distance that she will have to travel, we request that the Court recommend that Mr. Spiegelman be designated to the BOP facility at Ft. Dix, in New Jersey.

Honorable Richard J. Sullivan  December 1, 2010
United States District Judge  Page 11
Southern District of New York

Re: **United States v. Daniel Spiegelman**
    **S1 10 Cr. 339 (RJS)**

### CONCLUSION

For all of the foregoing reasons including the plea agreement, nature and circumstances of the offense, and Mr. Spiegelman's serious mental disability, a sentence at the low end of the applicable Guidelines Range, a total of 51 months incarceration, is warranted. Such a sentence is "sufficient, but not greater than necessary," to meet the goals of the Sentencing Reform Act.

Thank you for your consideration of these requests.

Respectfully submitted,

Robert M. Baum, Esq.
Assistant Federal Defender
Tel.: (212) 417-8760

RMB/wt

cc: Sarah E. Mc Callum, Esq.
    Assistant United States Attorney