UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                     :
UNITED STATES OF AMERICA             :
                                     :
         - v -                       :
                                     :   S1 10 Cr. 339 (RJS)
DANIEL SPIEGELMAN,                   :
   a/k/a "Daniel Spiegelmann,"       :
   a/k/a "Daniel Kikabidze,"         :
   a/k/a "Mark Sher,"                :
   a/k/a "Marc Sher,"                :
   a/k/a "Nathaniel Toresen,"        :
   a/k/a "David Toresen,"            :
   a/k/a "Andrew Minkovski,"         :
   a/k/a "Craig Wallace,"            :
                                     :
              Defendant.             :
                                     :
------------------------------------x

**SENTENCING MEMORANDUM**

                                   PREET BHARARA
                                   United States Attorney
                                   Southern District of New York
                                   Attorney for the United States
                                       of America

Sarah E. McCallum
     Assistant United States Attorney
     - Of Counsel -



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

December 3, 2010

Honorable Richard J. Sullivan
United States District Judge
United States District Court for the
Southern District of New York
500 Pearl Street
New York, New York  10007

> Re:   **United States v. Daniel Spiegelman**
>       **S1 10 Cr. 339 (RJS)**

Dear Judge Sullivan:

      Sentencing in the above-referenced matter is scheduled for December 9, 2010, at 3:00 p.m.  By submission dated December 1, 2010, the defendant requests that the Court sentence him to the bottom end of the range the parties have stipulated applies pursuant to the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines").  The Government, consistent with its plea agreement, simply requests that the Court impose a sentence within the agreed-upon range.  This letter is respectfully submitted principally to address a legal argument the defendant has made concerning his criminal history calculation.

## Background

### A.  The Offense Conduct

      The defendant here has pleaded guilty to all charges in a three-count Superseding Indictment: bank fraud in violation of 18 U.S.C. § 1344, aggravated identity theft in violation of 18 U.S.C. § 1028A, and unlawful possession of five or more identification documents in violation of 18 U.S.C. § 1028(a)(3).  The offense conduct, which is summarized in the Presentence Investigation Report ("PSR") prepared by the United States Probation Office ("Probation"), falls into two categories:  (1) the use of another person's identity (that of Mark Sher) to obtain a line of credit from Capital One Bank (USA), N.A. ("Capital One"), and (2) the possession of a number of identification documents bearing the defendant's photograph but other people's names (specifically, the names of Nathaniel Toresen, David Toresen, and Andrew Minkovski).  (See PSR ¶¶ 8-20.)

Honorable Richard J. Sullivan
December 3, 2010
Page 2 of 4

No pecuniary loss resulted from the charged offenses; in the few months that the defendant was able to use the Mark Sher Capital One credit card before his arrest, he paid off his bills. (This is reflected in the applicable Guidelines range, which is driven by factors other than loss.) It bears noting, however, that, by concealing his true identity, the defendant exposed Capital One to a more acute risk of loss than might normally be expected in such circumstances. That is because, by the time he applied for this Mark Sher card in October 2009, the defendant had defaulted no fewer than three times on Capital One credit card bills he had incurred, resulting in three separate judgments against him in his own name. (See PSR ¶ 15.) The defendant was a particularly bad credit risk – not just in general, but for Capital One in particular.

Moreover, although no pecuniary loss was suffered here, identity theft by its very nature inflicts serious harm. Mark Sher and Nathaniel Toresen are believed to be deceased (see PSR ¶¶ 13, 18), but their families must suffer the affront of learning that a stranger masqueraded as their kin. And while the 12-year-old boy whose social security number the defendant appropriated to secure the Mark Sher credit card (see PSR ¶ 13) has suffered no tangible harm, his identity has nonetheless been hijacked by a stranger, and he has been exposed to a credit risk.

### B. The Defendant's Criminal History

As noted, the Guidelines range agreed to by the parties and by Probation is 51 to 57 months. The sentencing calculation here is driven in large measure by the defendant's very substantial criminal history. In this courthouse alone, the defendant has been convicted of six federal offenses (not counting these ones) in the past twelve years. First, on April 24, 1998, the defendant was sentenced before the Honorable Lewis A. Kaplan to 60 months' imprisonment for charges of transporting stolen goods, passport fraud, and possession of a firearm by a felon. (PSR ¶ 43.) The transportation of stolen goods charge arose from the defendant's theft of more than a million dollars' worth of rare books from Columbia University Library and subsequent sale of those books for his own profit.[1] The defendant was caught trying to make sales in the Netherlands. (PSR ¶ 44.) Found in one of his storage lockers in the United States were receipts reflecting purchases of handguns. (Id.)

Near the end of his 60-month sentence, while the defendant was housed in a halfway house in Manhattan, he traveled to Connecticut to try to sell more of the documents and books he had stolen from Columbia Library. (PSR ¶ 47.) He did so under an assumed name. He was caught, and prosecuted before the Honorable Loretta A. Preska for escape and transportation of stolen goods. (PSR ¶¶ 46-47.) Judge Preska sentenced the defendant to 24 months' imprisonment, to be followed by three years' supervised release. (PSR ¶ 46.)

---

[1] This offense is the subject of a book by Travis McDade entitled *The Book Thief: The True Crimes of Daniel Spiegelman* (2006 ed.).

After this sentence was imposed, authorities learned that, while he has designated to the Manhattan halfway house discussed above, the defendant had also committed another crime: passport fraud. He had applied for and obtained a United States passport in the name "Mark Brian Sher." (PSR ¶¶ 49-50.) Using this passport, Spiegelman fled the country upon his release from prison following the term of incarceration imposed by Judge Preska. (PSR ¶ 50.) He thereby violated the terms of his supervised release.

The defendant was caught in Belgium on December 21, 2006 – not for a fraud offense, but for having grown over 200 marijuana plants. (PSR ¶¶ 50, 57.) The document he used to identify himself to Belgian authorities was the "Mark Brian Sher" passport he had acquired illegally while still in custody of the Bureau of Prisons on his 1998 conviction. (PSR ¶ 50.) Fingerprinting, however, revealed the defendant's true identity. The United States sought and obtained extradition in 2007, and the defendant was prosecuted for passport fraud before the Honorable Richard J. Holwell. (PSR ¶¶ 49-50.) The terms of the extradition treaty between the United States and Belgium prevented the Government from prosecuting the defendant for his violations of supervised release. (PSR ¶ 45.)

After his release from prison on the 2009 passport fraud, the defendant promptly disappeared again, failing to report to Probation even once. (PSR ¶ 51.) He surfaced briefly in February 2009 to apply for a new passport in Connecticut, but had left the passport office by the time the relevant authorities arrived. A warrant issued out of this District for his arrest. (Id.) Finally, in February 2010, an agent from the Department of State, Diplomatic Security Service was alerted to the defendant's presence, once again, at a Connecticut passport office, and was able to effectuate an arrest. (PSR ¶ 9.) The search incident to that arrest led to evidence supporting the instant charges.

## Discussion

The Government respectfully submits that a sentence within the stipulated Guidelines range of 51 to 57 months' imprisonment is appropriate in this case. Probation and the defendant are essentially in agreement, except that the former recommends a sentence at the top of the Guidelines and the defendant recommends one at the bottom of the Guidelines. The Government takes no position on where within the range the sentence should fall.

The Government does, however, wish to respond briefly to an argument defense counsel has raised concerning the defendant's criminal history calculation. The defendant has argued that his 2009 passport fraud conviction before Judge Holwell for use of the Mark Sher passport ought to not have been counted toward his criminal history calculation because that offense was "in preparation for" the current offenses of conviction. (Letter from Robert Baum, Esq. to the Honorable Richard J. Sullivan, dated Dec. 1, 2010 ("Def. Ltr.") at 5-6.) That is incorrect.

Honorable Richard J. Sullivan
December 3, 2010
Page 4 of 4

      Counted in the criminal history calculation are prior sentences "for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). "Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under §1B1.3 (Relevant Conduct)." U.S.S.G. § 4A1.2 cmt. 1. And relevant conduct is defined in pertinent part to include "all acts and omissions committed . . . that occurred . . . in preparation for [the offense of conviction]." U.S.S.G. § 1B1.3(a)(1).

      The defendant's 1999 procurement of a passport in the name of Mark Sher under no reasonable analysis can be described as an offense "in preparation for" the bank fraud, aggravated identity theft, and unlawful possession of identification documents offenses at issue here, which were committed in 2009 and 2010. By the time the current offenses were committed, the defendant's Mark Sher passport had long been confiscated. He did not use that passport or any feature thereof (its number, for example) to apply for the Mark Sher Capital One card. The defendant's prior passport fraud was no more "in preparation for" his current offenses than the use of a firearm to shoot one person is "in preparation for" the use of that firearm to shoot another at a later date. One tool used to commit the prior offense (i.e., the defendant's knowledge of Mark Sher's identifying information) was also used to commit the most recent offenses of bank fraud and aggravated identity theft, but the offenses themselves are entirely distinct.

      Respectfully submitted,

      PREET BHARARA
      United States Attorney

By: _____
      Sarah E. McCallum
      Assistant United States Attorney
      Southern District of New York
      (212) 637-1033

cc:    Robert Baum, Esq. (by email)